[Civ. No. 10493. Fourth Dist., Div. Two. June 23, 1971.]

PALM SPRINGS SPA, INC., Plaintiff and Appellant, v.
COUNTY OF RIVERSIDE et al., Defendants and Respondents.

374

**COUNSEL**

Noah Ned Jamin for Plaintiff and Appellant.

Ray T. Sullivan, Jr., County Counsel, and Steven A. Broiles, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**GARDNER, P. J.**—On March 6, 1968, plaintiff filed a complaint to recover taxes against the defendant county. The complaint alleged the following: Since July 1, 1963, plaintiff was the owner of a leasehold interest in certain specified land in the City of Palm Springs held in trust by the United States for the benefit of the Agua Caliente Band of Mission Indians. In consequence of applicable federal law, the interest of the Indians in this land had been granted tax exempt status. Nevertheless, since July 1, 1963, the defendant county had annually assessed a tax against plaintiff's leasehold possessory interest in the tax exempt property. Plaintiff has paid these assessments under protest, and has applied to the county board of supervisors for a refund which request has been denied.

The action of the board of supervisors in assessing this possessory interest tax upon plaintiff's leasehold was asserted to be violative of the Constitutions of the United States and the State of California. The complaint prayed for the refund of some $264,000 in assessed possessory interest taxes paid to defendant subsequent to July 1, 1963. The complaint was subsequently amended to name the City of Palm Springs as a codefendant.

On March 27, 1969, the defendants filed a demurrer to plaintiff's complaint on the ground that it failed to state a cause of action. The points and authorities filed in support of the demurrer do not allege a procedural defect in the form of plaintiff's complaint; rather, they assert that as a matter of substantive law, the defendants were entitled to levy taxes against plaintiff's leasehold interest. The demurrer prayed, inter alia, that plaintiff take nothing by its complaint.

The court below sustained defendant's demurrer without leave to amend on January 13, 1970. A motion to reconsider this order was thereafter granted, but on March 6, 1970, the court reentered its order sustaining defendants' demurrer without leave to amend on the ground that the complaint failed to state a cause of action. Judgment in favor of defendants was thereafter entered. This appeal is taken from that judgment.

Initially, we note that while the judgment is one made after the sustaining of a demurrer without leave to amend, the defendants' attack in the court below went not to the formal sufficiency of the complaint but rather to the merits of plaintiff's claim for relief. Thus, defendants' motion was in the nature of one for a judgment on the pleadings. As such, it was proper for the court to sustain defendants' demurrer without leave to amend.

Plaintiff does not question the power of defendants to levy a property tax on the possessory interest of leaseholds on tax exempt fees in general. (Cal. Const., art. XIII, § 1; Gov. Code, §§ 29100, 43000 et seq.; Rev. & Tax. Code, § 107.) Defendants concede that they have no power to levy property taxes on the underlying fee interest held in trust by the United States for the benefit of the Agua Caliente Band of Mission Indians. (U.S. Const., art. I, § 8, cl. 3; *M'Culloch* v. *Maryland,* 17 U.S. (4 Wheat.) 316 [4 L.Ed. 579]; *Oklahoma Tax Commission* v. *Texas Co.,* 336 U.S. 342 [93 L.Ed. 721, 69 S.Ct. 561].) The precise question raised by this appeal is whether the state possessory interest tax imposed on the leasehold interest carved from the tax exempt federally owned fee is sufficiently indirect and remote as to be permissible under the doctrine of the *M'Culloch* and *Oklahoma Tax Commission* cases.

Initially, we note that the possessory interest tax plaintiff here challenges is imposed not on the fee interest held by plaintiff. (Rev. & Tax. Code,

§ 107.) The enforcement of the possessory interest tax is limited to seizure and sale of the possessory interest itself (Rev. & Tax. Code, §§ 2914, 2919), a suit for collection of the assessment against the leaseholder only (Rev. & Tax. Code, § 3003) or statutory summary judgment, again against the lessee only (Rev. & Tax. Code, §§ 3101-3107). The tax is entered on the unsecured roll and cannot form an encumbrance on the underlying fee interest of the United States. Thus, the only effect the imposition of the possessory interest tax has on the interest held by the United States stems from the fact that the tax lowers the rental fee the owner can charge on a leasehold.

■ Plaintiff's first contention is that the land here in question, owned by the United States in trust for the Agua Caliente Band of Mission Indians, does not form part of the State of California. Therefore, it is asserted, any attempt by the state or its political subdivisions to tax activities on the federal land is in excess of the jurisdiction of the state's authority.

Plaintiff asserts that the property here in question was at one time the public land of Mexico, and that title was ceded to the United States under the terms of the Treaty of Guadalupe Hidalgo. Both parties concede that the land here in question has been continuously owned by the United States since the admission of California to the Union. The Act of Congress admitting California to the Union provides in pertinent part: "Sec. 3. *And be it further enacted,* That the said State of California is admitted into the Union upon the express condition that the people of said State, through their legislature or otherwise, shall never interfere with the primary disposal of the public lands within its limits, and shall pass no law and do no act whereby the title of the United States to, and the right to dispose of, the same shall be impaired or questioned; and that they shall never lay any tax or assessment of any description whatsoever upon the public domain of the United States. . . ." (West's Ann. Codes; Cal. Const., vol. 3, p. 745.)

■ Indian reservations are geographically, politically and governmentally within the boundaries of the state wherein they are located, unless Congress, upon admission of the state into the Union, or otherwise, has by express words excepted such areas from that jurisdiction. (*United States* v. *McBratney,* 104 U.S. 621 [26 L.Ed. 869]; see also *People of the State of New York* ex rel. *Ray* v. *Martin,* 326 U.S. 496 [90 L.Ed. 261, 66 S.Ct. 307]; *Thomas* v. *Gay,* 169 U.S. 264 [42 L.Ed. 740, 18 S.Ct. 340]; *Draper* v. *United States,* 164 U.S. 240 [41 L.Ed. 419, 17 S.Ct. 107].) ■ Apparently there are no such expressed words of exception in the act granting California statehood.

On the contrary, it has been held that since the admission of California to the Union, the public lands of the United States (except such as have

been reserved for forts, navy yards, public buildings, etc.) are held as are the land of private persons, except that they cannot be taxed by the state, nor can the primary disposition of them be interfered with. (*Lux* v. *Haggin*, 69 Cal. 255, 335-336 [4 P. 919, 10 P. 674]; *Acosta* v. *County of San Diego*, 126 Cal.App.2d 455 [272 P.2d 92]; see also *People* v. *Shearer*, 30 Cal. 645.) By mutual consent of the governments of the United States and the State of California, state jurisdiction over certain parcels of federal land has been foresworn. However, the land involved in the instant litigation is not such a parcel. (Gov. Code, § 111.)

Moreover, Congress has enacted 28 U.S.C.A. § 1360, which states, in pertinent part: "(a) Each of the States or Territories listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over other civil causes of action, and those civil laws of such State or Territory that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory:

". . . . . . . . . . . . . . . .

"California . . . All Indian country within the State. . . ."

*Humble Pipe Line Co.* v. *Waggonner*, 376 U.S. 369 [11 L.Ed.2d 782, 84 S.Ct. 857], cited by plaintiff, is not in point. In that case, the State of Louisiana foreswore, and the United States government accepted, exclusive jurisdiction over the land forming an Air Force installation save in matters of criminal law. Thereafter, the state attempted to levy a personal property tax on the possessions of individuals located on the base. The Supreme Court disallowed this tax. In the instant case, as we have noted, the United States government has neither asserted nor the state government conceded exclusive federal jurisdiction over the subject property.

Similarly with the case of *Your Food Stores, Inc.* v. *Village of Espanola*, 68 N.M. 327 [361 P.2d 950]. As a condition of its admission to the Union, New Mexico was compelled to cede all jurisdiction over Indian land. Such condition was not imposed on California. Plaintiff's contention in this regard is without merit.

■ Plaintiff next asserts that the imposition of the possessory interest tax on the leasehold interest in federally owned land held in trust for the benefit of the Agua Caliente Band of Mission Indians constitutes a violation of article I, section 8, clause 3 of the Constitution of the United States,

which reads: "The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several states, and with the Indian Tribes; . . ." Presumptively, plaintiff's argument is to the effect that the imposition of the nondiscriminatory possessory interest tax on the leasehold imposes an undue burden on commerce with the Indians. Plaintiff cites no authority for this proposition, and we have found none. Analogizing to the rules applicable to determining whether a state regulation constitutes an undue burden on interstate commerce, we find that balancing the interests of the state in obtaining revenue by the taxation of a possessory interest against the interests of the United States in promoting trade with the Indians, the nondiscriminatory possessory interest tax does not constitute an undue burden. (*Southern Pacific Co.* v. *State of Arizona,* 325 U.S. 761 [89 L.Ed. 1915, 65 S.Ct. 1515].)

■ Next, plaintiff suggests that Congress has preempted the field of regulating commercial transactions having an economic impact upon the Agua Caliente Band of the Mission Indians. (25 U.S.C.A. §§ 261-264, 22 C.F.R. 10670-10674.) In dealing with this contention, we begin by noting that the validity of the claim cannot be judged by reference to broad statements about the comprehensive nature of federal regulation of Indian affairs. The question whether Congress and the commissions acting under it have so far exercised the exclusive jurisdiction that belongs to them as to exclude the state, must be answered by a judgment upon the facts of the particular case. Statements concerning the "exclusive jurisdiction" of Congress only beg the essential inquiry: whether Congress intended to make its jurisdiction exclusive. (*Head* v. *New Mexico Bd. of Exam. in Optometry,* 374 U.S. 424 [10 L.Ed.2d 983, 83 S.Ct. 1759]; *People of State of California* v. *Zook,* 336 U.S. 725 [93 L.Ed. 1005, 69 S.Ct. 841]; *Kelly* v. *State of Washington* ex rel. *Foss Co., Inc.,* 302 U.S. 1 [82 L.Ed. 3, 58 S.Ct. 87].)

In *Head* v. *New Mexico Bd. of Exam. in Optometry, supra,* the United States Supreme Court stated: "In areas of the law not inherently requiring national uniformity [see *Hines* v. *Davidowitz,* 312 U.S. 52 (85 L.Ed. 581, 61 S.Ct. 399)], our decisions are clear in requiring that state statutes, otherwise valid, must be upheld unless there is found 'such actual conflict between the two schemes of regulation that both cannot stand in the same area, [or] evidence of a congressional design to preempt the field.' *Florida Lime and Avocado Growers, Inc.* v. *Paul,* 373 U.S. 132, 141. . . ." (See also *Colorado Anti-Discrimination Commission* v. *Continental Air Lines, Inc.,* 372 U.S. 714 [10 L.Ed.2d 84, 83 S.Ct. 1022].)

It cannot be said that the taxation of the possessory interest of non-Indians on federal land held in trust for Indians is an area inherently re-

quiring uniform national regulation. Indeed, the United States Supreme Court has recognized the ability of local authorities to impose taxes of certain types on the activities of private persons conducted on Indian trust or other federal land. (*United States* v. *City of Detroit,* 355 U.S. 466 [2 L.Ed.2d 424, 78 S.Ct. 474]; *Oklahoma Tax Commission* v. *Texas Co., supra,* 336 U.S. 342.)

Neither can we find evidence of a congressional intent to preempt the field of regulating commercial activities between Indians and non-Indians. 25 U.S.C.A. sections 261-264, merely provide for the licensing and regulation of Indian traders, persons supplying retail goods to Indians living on reservations. Similarly, the regulations embodied in 22 C.F.R. 10670-10674. They do not purport to establish a comprehensive scheme of regulation governing all commercial transactions between Indians and non-Indians. Nor can we perceive any actual conflict or inconsistency between the application of the federal statutes and regulations, and the imposition of the possessory interest tax by the state. We find no federal preemption.

■ Next, plaintiff asserts that the imposition of a possessory interest tax on a leasehold on federally owned property amounts to a state tax on federal assets in violation of the United States Constitution as interpreted by *M'Culloch* v. *Maryland, supra,* 17 U.S. (4 Wheat.) 316, and its progeny. Plaintiff concedes that the state does not attempt to impose its tax on the fee interest owned by the federal government. His argument is based on the fact that imposition of the tax on the leasehold interest will lessen the rental fees the fee owner can command.

The United States Supreme Court has held that a local possessory interest tax levied on privately owned leasehold interest in federal land is too remote and indirect to constitute a tax on the federal government. (*United States* v. *City of Detroit, supra,* 355 U.S. 466.) Further, it has been held that nondiscriminatory state gross production and excise taxes on petroleum production may be imposed on the lessee of mineral rights in restricted Indian lands. (*Oklahoma Tax Commission* v. *Texas Co., supra,* 366 U.S. 342.) We find these cases dispositive of the plaintiff's contention. (See also *Agua Caliente Band of Mission Indians* v. *County of Riverside,* 442 F.2d 1184.)

■ Finally, plaintiff asserts that the imposition of the possessory interest tax in the instant case constitutes an infringement on the sovereignty of the Agua Caliente Band of Mission Indians, which proposes to levy a 2 percent tribal tax on plaintiff. Plaintiff cites no authority for this proposition, and we have found none. In a federal system of dual sovereignties, it is common

for multiple authorities to impose taxes on a single source of revenue, be it an income, a sales transaction, or a parcel of property. Consequently, it is not uncommon for similar sources of revenue to be taxed at varying rates. We perceive no infringement of the tribal sovereignty.

Kerrigan, J., and Tamura, J., concurred.